**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

| | |
|---|---|
| Camellia Chastain, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| - against - | Class Action Complaint |
| R. J. Reynolds Vapor Company, | Jury Trial Demanded |
| Defendant | |

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1. R. J. Reynolds Vapor Company ("Defendant") manufactures, markets, and sells e-cigarette pods under the Vuse brand ("Product").



## I. PRODUCT NOT OF UNIFORM QUALITY, COLOR, OR TASTE

2. Consumers purchase e-cigarettes for their functionality, ease of use, and convenience, which allow for the devices to be used beyond a single vape thanks to the use of easily replaced pre-filled pods.

3. Despite the marketing of the Product as capable of functioning reliably and of uniform quality, it was not of uniform quality and therefore could not function reliably, because the fluid in the pre-filled pods was of different colors and taste.

4. Because the fluid in the pods varied in quality, color, and taste, the palatability of the Product was significantly compromised.

5. While the fluid should be light in color and smooth in taste, consumers have been receiving pods with medium to dark brown fluid and a burnt, acrid taste.



6. Quality differences are not just limited to different batches, as a single 4-pack can include four pods of varying colors, and therefore varying quality and taste.



7. Many individuals have complained online about the Product and Defendant's handling of the situation, on sites like *facebook.com* and *reddit.com*.



3



tpmetii · 9 mo. ago

Same here I use a pod a day so over the last year that's approximately 177 bad ones I've gotten. They're way too expensive to be that inconsistent. I thought maybe they were having a hard time with quality in the manufacturing but, it seems like no other companies have this problem and their older styles are ok. If it's not a manufacturing issue then it's on purpose. I'm looking for another brand.

2   Reply  Share  Report  Save  Follow

Continue this thread →

8. Defendant has been aware of this issue for at least one year, as it has been contacted by consumers about the inconsistent quality, color, and taste of its pods and has offered coupons in response.



Impossible-Guitar-96 · 1 yr. ago

This has been a major problem for about 2 months now. I called and all they did was send me a BOGO coupon that took almost a month to get. Just opened a 2 pack this morning and both pods are dark. The second I find a different manufacturer whos juice tastes similar to Vuse Golden Tobacco I'm ditching Vuse for good.



sirfignewt · 11 mo. ago

Dude it's literally at least 50% bad pods. The dark ones are harsh, completely bad half way through and they hurt my lungs. Its embarrassing to ask the clerk at a gas station for a different pack three times in a row because they contain bad pods. Most of them refuse to exchange them. I even contacted vuse about this, they offered to send coupons for $1 pods (not even a resolution) for every one that I documented to be bad. It's been maybe two months and I never received them. When they're good they're great, the only vape flavor I enjoy, but I'm just going to drop them altogether.

9. Some consumers have not been as lucky as those offered coupons and have had Defendant instead tell them the differences in color are normal, even though they can taste and see a difference in quality.

4



10. As a result of the false and misleading representations, the Product is sold at a premium price, $14.99 for a pack of two pods and $24.99 for a pack of four pods, excluding tax and sales.

**JURISDICTION AND VENUE**

11. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

12. The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

13. Plaintiff is a citizen of Florida.

14. Defendant is a North Carolina corporation with a principal place of business in North Carolina.

15. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

16. The members of the class Plaintiff seeks to represent are more than 100, because the

5

Product has been sold with the representations described here from thousands of retailers including gas stations, convenience stores, and over the internet, in the States Plaintiff seeks to represent.

17. Venue is in this District with assignment to the Jacksonville Division because Plaintiff resides in this District and a substantial part of the events or omissions giving rise to these claims occurred in Duval County, including Plaintiff's purchase and/or use of the Product and awareness and/or experiences of and with the issues described here.

## PARTIES

18. Plaintiff Camellia Chastain is a citizen of Jacksonville, Duval County, Florida.

19. Defendant R. J. Reynolds Vapor Company is a North Carolina corporation with a principal place of business in Winston-Salem, Forsyth County, North Carolina.

20. Defendant manufactures and markets Vuse pods, known for the highest quality, ingredients, and taste.

21. Plaintiff purchased the Product or substantially similar products at retailers including but not limited to Circle K, 9001 Southside Blvd, Jacksonville FL 32256 between December 2019 and December 2022, and/or among other times, at or around the above-referenced price.

22. Plaintiff paid more for the Product than she would have had she known the representations and omissions were false and misleading, or would not have purchased it.

23. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

24. Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance its representations are consistent with its attributes and/or composition.

25. Plaintiff is unable to rely on the labeling of not only this Product, but other similar products, because she is unsure of whether their representations are truthful.

## CLASS ALLEGATIONS

26. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Florida Class:** All persons in the State of Florida who purchased the Product during the statutes of limitations for each cause of action alleged; and

> **Consumer Fraud Multi-State Class**: All persons in the States of North Carolina, South Carolina, Georgia, Alabama, and Mississippi who purchased the Product during the statutes of limitations for each cause of action alleged.

27. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

28. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

29. Plaintiff is an adequate representative because her interests do not conflict with other members.

30. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

31. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

32. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

33. Plaintiff seeks class-wide injunctive relief because the practices continue.

## CAUSES OF ACTION

### COUNT I

### Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, *et seq.*

34. Plaintiff incorporates by reference all preceding paragraphs 1-10.

35. Plaintiff brings this claim on her own behalf and on behalf of each member of the Florida Class.

36. Defendant violated and continues to violate Florida's Deceptive and Unfair Trade Practices Act by engaging in unfair methods of competition, unconscionable acts and practices, and unfair and deceptive acts and practices in the conduct of its business.

37. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions, that it would be of uniform quality, color, and taste and capable of functioning reliably.

38. The material misstatements and omissions alleged herein constitute deceptive and unfair trade practices, in that they were intended to and did deceive Plaintiff and the general public into believing that the Product would be of uniform quality, color, and taste and capable of functioning reliably.

39. Plaintiff and class members relied upon these representations in deciding to purchase the Product.

40. Plaintiff's reliance was reasonable because of Defendant's reputation as a trusted and reliable company, known for its high-quality e-cigarettes and pre-filled pods, honestly marketed to consumers.

41. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

8

42. Defendant's conduct offends established public policy and is immoral, unethical, oppressive, and unscrupulous to consumers.

43. Plaintiff and class members are entitled to damages in an amount to be proven at trial.

44. Defendant should also be ordered to cease its deceptive advertising and should be made to engage in a corrective advertising campaign to inform consumers that the Product is not of uniform quality, color, and taste or capable of functioning reliably.

## COUNT II

### Violation of State Consumer Fraud Acts
### (Consumer Fraud Multi-State Class)

45. Plaintiff incorporates by reference preceding paragraphs 1-10.

46. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

47. The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

48. Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, which they did, suffering damages.

## COUNT III

### False and Misleading Adverting,
### Fla. Stat. § 817.41

49. Plaintiff incorporates by reference preceding paragraphs 1-10.

50. Plaintiff brings this claim on her own behalf and on behalf of each member of the Florida Class.

51. Defendant made numerous misrepresentations of material fact, that the Product would be of uniform quality, color, and taste and capable of functioning reliably, through its advertisements and marketing, through various forms of media, product descriptions distributed to resellers, and targeted digital advertising.

52. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

53. Defendant knew that these statements were false.

54. Defendant intended for consumers to rely on its false statements for the purpose of selling the Product.

55. Plaintiff and class members did in fact rely upon these statements.

56. Reliance was reasonable and justified because of Defendant's reputation as a trusted and reliable company, known for its high-quality e-cigarettes and pre-filled pods, honestly marketed to consumers.

57. As a result of Defendant's misrepresentations, Plaintiff and class members suffered damages in the amount paid for the Product.

58. Plaintiff and class members are entitled to damages and injunctive relief as set forth above.

## COUNT IV

**Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose
and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.**

59. Plaintiff incorporated by reference preceding paragraphs 1-10.

60. The Product was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff that it would be of uniform quality, color, and taste

and capable of functioning reliably.

61. Defendant directly marketed the Product to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions, and targeted digital advertising.

62. Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet their needs and desires.

63. The representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant it would be of uniform quality, color, and taste and capable of functioning reliably.

64. Defendant's representations affirmed and promised that the Product would be of uniform quality, color, and taste and capable of functioning reliably.

65. Defendant described the Product so Plaintiff believed it would be of uniform quality, color, and taste and capable of functioning reliably, which became part of the basis of the bargain that it would conform to its affirmations and promises.

66. Defendant had a duty to disclose and/or provide non-deceptive promises, descriptions and marketing of the Product.

67. This duty is based on Defendant's outsized role in the market for this type of product, a leading seller of e-cigarettes and pre-filled pods.

68. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

69. Plaintiff provided or provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's warranties.

70. Defendant received notice and should have been aware of these issues due to complaints by consumers and third-parties, including regulators and competitors, to its main

offices and through online forums.

71. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

72. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if it would be of uniform quality, color, and taste and capable of functioning reliably.

73. The Product was not merchantable because Defendant had reason to know the particular purpose for which it was bought by Plaintiff, because she expected that it would be of uniform quality, color, and taste and capable of functioning reliably, and she relied on Defendant's skill and judgment to select or furnish such a suitable product.

## COUNT V

### Negligent Misrepresentation

74. Plaintiff incorporates by reference preceding paragraphs 1-10.

75. Defendant had a duty to truthfully represent the Product, which it breached.

76. This duty was non-delegable, based on Defendant's position, holding itself out as having special knowledge and experience in this area, an industry leader in e-cigarettes and pre-filled pods.

77. The representations and omissions went beyond the specific representations on the packaging, as they incorporated the extra-labeling promises and commitments to quality, transparency and putting customers first that it has been known for.

78. These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

79. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

80. Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, her purchase of the Product.

## COUNT VI

### Fraud
### (Fed. R. Civ. P. 9(b) Allegations)

81. Plaintiff incorporates by reference preceding paragraphs 1-10.

82. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it would be of uniform quality, color, and taste and capable of functioning reliably.

83. The records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity and deception, through statements and omissions.

84. Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

85. To the extent necessary, as detailed in the paragraphs above and below, Plaintiff has satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity.

86. WHO: Defendant, R. J. Reynolds Vapor Company, made material misrepresentations and/or omissions of fact in its advertising and marketing of the Product by representing that the Product would be of uniform quality, color, and taste and capable of functioning reliably.

87. WHAT: Defendant's conduct here was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the Product would be of uniform quality,

color, and taste and capable of functioning reliably.

88. Defendant omitted from Plaintiff and class members that the Product is not of uniform quality, color, and taste or capable of functioning reliably.

89. Defendant knew or should have known this information is material to all reasonable consumers and impacts consumers' purchasing decisions.

90. Yet, Defendant has and continues to represent that the Product will be of uniform quality, color, and taste and capable of functioning reliably.

91. WHEN: Defendant made material misrepresentations and/or omissions detailed herein, including that the Product would be of uniform quality, color, and taste and capable of functioning reliably, continuously throughout the applicable Class period(s).

92. WHERE: Defendant's material misrepresentations and omissions, that the Product would be of uniform quality, color, and taste and capable of functioning reliably, were located in the advertising and marketing of the Product.

93. The Product is sold from thousands of retailers including gas stations, convenience stores, and online.

94. HOW: Defendant made written and visual misrepresentations and omissions in the advertising and marketing of the Product, that it would be of uniform quality, color, and taste and capable of functioning reliably.

95. As such, Defendant's representations are false and misleading.

96. And as discussed in detail throughout this Complaint, Plaintiff and class members read and relied on Defendant's representations and omissions before purchasing the Product.

97. WHY: Defendant misrepresented that the Product would be of uniform quality, color, and taste and capable of functioning reliably, for the express purpose of inducing Plaintiff

14

and class members to purchase the Product at a substantial price premium.

98. As such, Defendant profited by selling the misrepresented Product to at least thousands of consumers throughout the nation.

## COUNT VII

### Unjust Enrichment

99. Plaintiff incorporates by reference preceding paragraphs 1-10.

100. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

### Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, Certifying Plaintiff as representative and the undersigned as counsel for the classes;

2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3. Awarding monetary, statutory and/or punitive damages and interest;

4. Awarding costs and expenses, including reasonable attorney and expert fees; and

5. Other and further relief as the Court deems just and proper.

Dated:   January 11, 2023

Respectfully submitted,

/s/ William Wright
The Wright Law Office, P.A.
515 N Flagler Dr Ste P300
West Palm Beach FL 33401
(561) 514-0904

15

willwright@wrightlawoffice.com

Sheehan & Associates, P.C.
Spencer Sheehan (*Pro Hac Vice f*orthcoming)
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com